**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

J. PALMER,

     Plaintiff,

  v.

SPOTIFY TECHNOLOGY S.A.,

SPOTIFY USA INC.,

SPOTIFY AB,

SPOTIFY NETHERLANDS B.V.,

     Defendants.

Case No. _____

---

**COMPLAINT**

Plaintiff J. Palmer, *pro se*, for his Complaint against Defendants, alleges as follows:

**I. INTRODUCTION**

1.   This action arises from Defendants' retaliation against a whistleblower who reported securities law violations to the United States Securities and Exchange Commission.

2. Plaintiff is a Senior Engineer employed by Spotify Netherlands B.V., a subsidiary of Spotify Technology S.A. Spotify Technology S.A. is a Luxembourg company listed on the New York Stock Exchange and subject to SEC reporting obligations. Plaintiff served as elected Chairman of the Works Council, the statutory employee representative body under Dutch law. He has been on sick leave since June 2024 due to a work-related illness, as confirmed by thirteen consecutive company doctor assessments.

3. On 29-30 January 2026, Plaintiff delivered a 145-page memorandum to the Audit Committee of Spotify Technology S.A.'s Board of Directors, documenting governance failures, legal violations, and potential liability in the range of eight to nine figures, and identifying matters requiring disclosure in the Company's SEC filings. The memorandum and accompanying cover letter explicitly invoked whistleblower protections. On 10 February 2026, Spotify Technology S.A. filed its annual report on Form 20-F with the SEC. That filing did not disclose the matters or the potential liability documented in Plaintiff's memorandum, despite the memorandum having been in the Audit Committee's possession for over two weeks. Officer certifications accompanying the filing stated that no material facts had been omitted.

4. On 20 February 2026, Plaintiff notified Defendants' compliance team in writing that the Form 20-F was deficient and that he intended to refer the matter to the SEC. Six days later, on 26 February 2026, an HR representative threatened to stop Plaintiff's salary. The individual who made the threat had been copied on Plaintiff's correspondence reporting the underlying wrongdoing. She is the direct report of the senior HR representative who, on 19 February 2026, confirmed that the compliance team would be contacting Plaintiff regarding his memorandum. On 1 March 2026, Plaintiff filed a formal disclosure with the SEC (TCR Submission No. 17724-027-843-868).

5. Plaintiff brings two claims: (I) retaliation in violation of the whistleblower protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h), and (II) civil racketeering in violation of 18 U.S.C. § 1964(c), based on a pattern of obstruction and retaliation carried out through the Spotify corporate enterprise. Plaintiff seeks injunctive relief,

reinstatement, double back pay with interest, treble damages, and costs.

## II. PARTIES

6.     Plaintiff J. Palmer is a citizen of the Netherlands, with a registered home address at Paetsstraat 2A, 3039 XP Rotterdam, The Netherlands. He is employed as a Senior Engineer by Spotify Netherlands B.V. He filed a disclosure with the SEC on 1 March 2026 (TCR Submission No. 17724-027-843-868) and is a "whistleblower" within the meaning of 15 U.S.C. § 78u-6(a)(6). See *Digital Realty Trust, Inc. v. Somers*, 583 U.S. 330 (2018).

7.     Defendant Spotify Technology S.A. is a société anonyme (public limited company) organised under the laws of Luxembourg. It is the ultimate parent company of the Spotify group. Its ordinary shares are listed on the New York Stock Exchange under the ticker symbol "SPOT." It files annual reports on Form 20-F and other documents with the SEC. Its officers sign certifications attesting to the completeness and accuracy of those filings.

8.     Defendant Spotify USA Inc. is a corporation organised under the laws of Delaware with its principal place of business at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007. It is a wholly-owned subsidiary of Spotify Technology S.A. Plaintiff's memorandum to the Audit Committee was delivered to Spotify USA Inc. at its New York address by registered post on 29 January 2026.

9.     Defendant Spotify AB is an aktiebolag (public limited company) organised under the laws of Sweden, headquartered in Stockholm. It is a subsidiary of Spotify Technology S.A. It houses the senior management and HR leadership involved in the conduct at issue. Plaintiff's memorandum was delivered to Spotify AB at its Stockholm address by registered post on 29 January 2026.

10.     Defendant Spotify Netherlands B.V. is a besloten vennootschap (private limited company) organised under the laws of the Netherlands. It is a subsidiary of Spotify Technology S.A. and

is Plaintiff's direct employer.  Adverse employment actions against Plaintiff are executed through this entity.

11.  Defendants operate as a unified corporate group.  Legal strategy, compliance functions, investor relations, and governance oversight are directed from the United States. The General Counsel of Spotify Technology S.A. is based in New York.  The Chair of the Audit Committee of the Board of Directors, Thomas Staggs, is based in the United States.  Key members of the Board of Directors are US-based.  HR decisions affecting Plaintiff's employment are made through a management chain spanning Spotify Netherlands B.V., Spotify AB (Stockholm), and the parent company, with legal and compliance oversight from the United States.  Spotify Netherlands B.V. acts as the employer of record, but decisions regarding the response to Plaintiff's memorandum, the handling of his compliance notifications, and the salary threat at issue were made or directed by individuals located in the United States and Sweden reporting to the parent company.  (Palmer Decl. ¶¶3-5.)

### III. JURISDICTION AND VENUE

12.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  The Complaint presents claims arising under the Securities Exchange Act of 1934, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. § 78u-6(h)), and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)).

13.  This Court has jurisdiction over Plaintiff's Exchange Act claim pursuant to 15 U.S.C. § 78aa, which provides for exclusive federal jurisdiction over claims arising under the Securities Exchange Act and rules promulgated thereunder.

14.  This Court has jurisdiction over Plaintiff's RICO claim pursuant to 18 U.S.C. § 1965(a), which provides that civil RICO actions may be brought in any district in which the defendant

resides, is found, has an agent, or transacts affairs. Spotify USA Inc. maintains its principal place of business at 4 World Trade Center in this District and transacts affairs here.

15.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any related claims that form part of the same case or controversy.

16.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a). Spotify USA Inc. resides in this District.  Spotify Technology S.A.'s securities are listed on the New York Stock Exchange, located in this District. The Form 20-F at issue was filed with the SEC through operations in this District.  Plaintiff's memorandum was delivered to Spotify USA Inc. in this District.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Protected Activity

17.   Plaintiff has been employed by Spotify Netherlands B.V. as a Senior Engineer since 4 April 2022.  His total compensation for 2025 was approximately $1,260,000, comprising salary and equity awards in Spotify Technology S.A. ordinary shares listed on the NYSE. (Palmer Decl. ¶¶2-3.)

18.   Plaintiff was elected Chairman of the Works Council at Spotify Netherlands B.V. The Works Council is a statutory employee representative body established under Dutch law (*Wet op de ondernemingsraden*), analogous to a recognised union under US labour law.  In that capacity, Plaintiff was involved in legal proceedings before the Enterprise Chamber (*Ondernemingskamer*) of the Amsterdam Court of Appeal, in which Spotify was found to have violated its statutory consultation obligations (ECLI:NL:GHAMS:2023:3520, 22 December 2023). (Palmer Decl. ¶4.)

19. Plaintiff has been on sick leave since June 2024. Thirteen consecutive assessments by the company doctor (*bedrijfsarts*, an independent occupational physician whose medical determinations are binding under Dutch statutory sick leave law) have classified his illness as work-related. The most recent assessment, dated 15 December 2025, explicitly states that work-related problems caused the sick leave. (Palmer Decl. ¶¶5-6.)

20. Prior to his SEC disclosure, Plaintiff experienced a pattern of escalating adverse employment actions, including: a retaliatory performance rating explicitly tied to his exercise of statutory employee-representation rights, a protected status under Dutch law analogous to protected union activity under US labour law (April-June 2024); the use of confidential medical information to threaten suspension of salary payments (19 May 2025); and an explicit threat to impose punitive work requirements in retaliation for refusing to settle and release his claims, executed within four days of the threat (21 November 2025). (Palmer Decl. ¶¶33-37.)

## B. Memorandum to the Audit Committee

21. In January 2026, Plaintiff prepared a 145-page memorandum documenting governance failures, legal violations, and retaliatory conduct within the Spotify group. The memorandum sets out potential liability in the range of eight to nine figures. It identified matters that Plaintiff understood to require disclosure in Spotify Technology S.A.'s filings with the SEC, including material pending or reasonably foreseeable legal proceedings and risks. (Palmer Decl. ¶¶7-9.)

22. On 29-30 January 2026, Plaintiff delivered the memorandum by DHL registered post to three Spotify entities:

(a)   Spotify USA Inc., New York, New York (delivered 29 January 2026, DHL tracking 4415432862);

(b)   Spotify AB, Stockholm, Sweden (delivered 29 January 2026, DHL tracking 4415711252);

(c)   Spotify Technology S.A., 33 Boulevard Prince Henri, 1724 Luxembourg, Luxembourg (delivered 30 January 2026, signed by K. Gro, DHL tracking 4414403696).

6

(Palmer Decl. ¶10, Ex. 4.)

23.  The memorandum was accompanied by a cover letter addressed to Thomas Staggs, Chair of the Audit Committee of the Board of Directors, and to the other members of the Audit Committee. The cover letter explicitly invoked whistleblower protections and noted that Plaintiff's prior escalation to the General Counsel had also invoked whistleblower protections. The cover letter noted that the matters documented in the memorandum did not appear in the Company's SEC filings and stated that future filings would be reviewed accordingly. The cover letter requested that Investor Relations bypass the General Counsel's office due to a conflict of interest. (Palmer Decl. ¶¶11-12, Ex. 6.)

24.  The Audit Committee Charter, publicly filed with the SEC, requires the Committee to discuss with management and the General Counsel "any legal matters (including the status of pending litigation) that may have a material impact on the Company's financial statements," to establish procedures for the receipt and treatment of employee complaints regarding violations of the Company's code of conduct, and to review and evaluate the Company's compliance with legal and regulatory requirements.

25.  On 2 February 2026, Plaintiff sent the memorandum and accompanying cover letter directly to Company management by email, including Ms Krusenstierna, the General Counsel, and the senior HR representative handling settlement discussions. The cover letter explicitly invoked whistleblower protections under the Dutch Whistleblower Protection Act (*Wet bescherming klokkenluiders*). All recipients of the salary threat of 26 February 2026 had received the memorandum and its whistleblower invocations at least 24 days prior. (Palmer Decl. ¶13.)

### C. Form 20-F Filing

26.  On 26 November 2025, Plaintiff requested in writing that the Company preserve all documents relating to his employment. On 9 December 2025, in a letter prepared with the assistance

of its legal team and external legal adviser, the Company confirmed that "[a] 'legal hold' has been put in place" on documents relating to Plaintiff's employment, "to ensure that it will not be automatically deleted due to any internal policy." The Company filed its Form 20-F two months later. (Palmer Decl. ¶¶14, 15.)

27.   On 10 February 2026, Spotify Technology S.A. filed its annual report on Form 20-F with the SEC. The filing was signed by officers of the Company who certified, pursuant to Rules 13a-14 and 15d-14 under the Securities Exchange Act and 18 U.S.C. § 1350, that the report did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made not misleading. (Palmer Decl. ¶16.)

28.   The Form 20-F discloses certain litigation matters, including mechanical licensing disputes. It does not disclose the matters or the potential liability documented in Plaintiff's memorandum, despite the memorandum having been delivered to the Audit Committee more than two weeks before the filing date. (Palmer Decl. ¶16.)

### D. Post-Filing Events and Retaliation

29.   On 19 February 2026, three weeks after delivery, Defendants' compliance team acknowledged receipt of the memorandum. (Palmer Decl. ¶17, Ex. 3.)

30.   On the same date, Courtney Agerter, a senior HR representative, confirmed during a telephone call that the compliance team would be contacting Plaintiff regarding the memorandum. She subsequently confirmed this in writing by email. (Palmer Decl. ¶18.)

31.   Plaintiff has not received confirmation that Thomas Staggs, Chair of the Audit Committee and the addressee of the memorandum, has personally reviewed it. (Palmer Decl. ¶19.)

32.   On 20 February 2026, Plaintiff notified the compliance team in writing that the Form 20-F was deficient and that, absent a substantive response by 24 February 2026, he would refer the matter to the SEC. (Palmer Decl. ¶20, Ex. 2.)

33.   No substantive response was received by the stated deadline. (Palmer Decl. ¶21.)

34.   On 26 February 2026, Ebba Krusenstierna, an HR representative, threatened in writing to stop Plaintiff's salary.  The threat was framed as a response to Plaintiff's non-completion of a periodic evaluation form, a mandatory submission to the Dutch government agency responsible for employee welfare.  The Company had sent routine reminders regarding the same form on 8 January, 20 January, and 13 February 2026, none of which threatened any consequences.  The escalation to a salary threat occurred only after Plaintiff's 20 February 2026 notification of his intent to file with the SEC. The form contained employer statements regarding the reintegration process. Plaintiff's memorandum to the Audit Committee, delivered after the initial form request, documented that the Company's characterisations of that process were false.  The cover letter accompanying the memorandum, sent to Company management on 2 February 2026, stated that it addressed all outstanding matters between the parties. (Palmer Decl. ¶22, Ex. 1.)

35.   Ms Krusenstierna is Plaintiff's primary HR contact.  She was the direct recipient of Plaintiff's 2 February 2026 email to management, which attached the memorandum and a cover letter explicitly invoking whistleblower protections.  She was also copied on prior correspondence in which Plaintiff reported the underlying wrongdoing.  She is the direct report of Ms Agerter, who handles settlement discussions and who, on 19 February 2026, confirmed the compliance team's engagement with Plaintiff's memorandum. (Palmer Decl. ¶¶23, 25.)

36.   The salary threat occurred six days after Plaintiff's written notification to the compliance team of his intention to refer the matter to the SEC. (Palmer Decl. ¶26.)

37.   On 1 March 2026, Plaintiff filed a formal disclosure with the SEC via the TCR portal (Submission No. 17724-027-843-868). Plaintiff opted in to the SEC whistleblower award programme. (Palmer Decl. ¶¶27, 30, Ex. 5.)

38.   On 1 March 2026, Plaintiff sent a formal notice to the Company, addressed to the compliance team, the General Counsel, the CHRO, and relevant HR personnel, citing the federal criminal

whistleblower protection statutes (18 U.S.C. §§ 1512, 1513) and the Dodd-Frank anti-retaliation provisions. (Palmer Decl. ¶28.)

39.   On 1 March 2026, Plaintiff sent a supplementary letter directly to the Chair of the Audit Committee via the Board email address and Investor Relations, notifying him of the SEC disclosure and invoking the Audit Committee's oversight obligations under Section 301 of the Sarbanes-Oxley Act and NYSE Rule 303A.07. (Palmer Decl. ¶29.)

40.   On 2 March 2026, Plaintiff submitted a report of the alleged criminal conduct to the Federal Bureau of Investigation via the FBI's online tip portal (FBI Submission ID: 35ccd3b4c0454945a 05e635c2cfed7d9).  On 3 March 2026, Plaintiff sent a further disclosure to the FBI by registered post. (Palmer Decl. ¶31.)

41.   On 3 March 2026, Plaintiff disclosed the alleged criminal conduct to the United States Attorney's Office for the Southern District of New York by registered post. (Palmer Decl. ¶32.)

### E. RICO Enterprise and Pattern of Racketeering Activity

42.   Spotify Technology S.A. and its subsidiaries, including Spotify USA Inc., Spotify AB, and Spotify Netherlands B.V., constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).  The enterprise operates through a coordinated management structure spanning multiple jurisdictions.  Compliance, legal, and personnel decisions are directed centrally and executed through subsidiary entities. (Palmer Decl. ¶¶3-5, 11.)

43.   Defendants have conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of acts indictable under 18 U.S.C. § 1512 (tampering with a witness, victim, or informant) and 18 U.S.C. § 1513 (retaliating against a witness, victim, or informant).

44.   **Predicate Act 1: Obstruction (18 U.S.C. § 1512(b)(3)).**  On 26 February 2026, Defendants, through Ms Krusenstierna, threatened in writing to stop Plaintiff's salary. This threat was made six

days after Plaintiff notified the compliance team in writing of his intention to refer the Company's SEC filing deficiency to a federal law enforcement agency. The threat constituted the knowing use of intimidation to hinder, delay, or prevent communication to a law enforcement officer of information relating to the possible commission of federal offences, in violation of 18 U.S.C. § 1512(b)(3). No official proceeding need be pending for this offence to be complete. 18 U.S.C. § 1512(f)(1). This statute has extraterritorial federal jurisdiction. 18 U.S.C. § 1512(h). (Palmer Decl. ¶¶20-26, Exs. 1-2.)

45. **Predicate Act 2: Retaliation (18 U.S.C. § 1513(e)).** On 1 March 2026, Plaintiff provided truthful information to the SEC relating to the possible commission of federal offences. Any action harmful to Plaintiff undertaken in retaliation for providing that information, including interference with his employment or livelihood, constitutes a violation of 18 U.S.C. § 1513(e). This statute has extraterritorial federal jurisdiction. 18 U.S.C. § 1513(d). The salary threat of 26 February 2026 has not been withdrawn. Any execution of that threat, or any further adverse employment action following the SEC filing, constitutes a separate predicate act. (Palmer Decl. ¶¶27-28, 44.)

46. In the alternative, the pattern of racketeering activity includes conduct preceding Plaintiff's SEC notification that shares the same purpose and method as the core predicate acts. The pattern of economic coercion dates to at least April 2024, when Defendants issued a retaliatory performance rating explicitly tied to Plaintiff's exercise of statutory employee-representation rights, a protected class under Dutch law analogous to protected union activity under US labour law, and HR refused to correct it. On 21 November 2025, Defendants explicitly linked Plaintiff's rejection of a settlement offer to "intensifying" reintegration obligations. That threat was executed within days: on 26 November 2025, a reintegration coach who had previously concluded her involvement was not necessary was re-engaged at the Company's direction. The coach confirmed in writing that she was "just doing what was asked." This conduct, like the later predicate acts, used economic coercion to punish Plaintiff for asserting his rights and refusing to abandon his complaints about corporate wrongdoing. On information and belief, by November 2025, Defendants were aware that

Plaintiff was documenting matters that could give rise to regulatory and disclosure obligations, and the settlement offer was designed to secure Plaintiff's silence. This earlier conduct is related to the predicate acts in paragraphs 44-45 and demonstrates the continuity and modus operandi of the enterprise's scheme. (Palmer Decl. ¶¶33-37, Ex. 7.)

47.   Beginning on 26 November 2025, Plaintiff repeatedly requested in writing that Defendants provide the Company's whistleblower policy and internal reporting channels.  Dutch, European, and US law require publicly traded companies to maintain and communicate such procedures. The Company's own whistleblower policy states that it is "intended to encourage and enable... employees... to make Spotify aware of any practices, procedures or circumstances that raise concerns, including any regarding the integrity of Spotify's financial disclosures, books and records," and that "[a]ccounting and auditing complaints will be reviewed and investigated by the Company's Audit Committee." On 7 December 2025, Plaintiff escalated to the General Counsel, explicitly invoking whistleblower protections.  Two days later, on 9 December 2025, a letter prepared with the assistance of the Company's internal legal team and external legal adviser refused to provide any Company policies, stating that the Company did "not have these in PDF format" and directing Plaintiff to the company intranet rather than providing a copy.  The Company did not provide the whistleblower policy until 4 February 2026, two days after Plaintiff delivered the memorandum to management, and more than ten weeks after his first request.  SEC Rule 21F-17(a) prohibits any person from taking "any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation." See *In re KBR, Inc.*, SEC Release No. 74619 (Apr. 1, 2015).  The Company thus refused for over ten weeks, with counsel involvement at the highest levels, to provide the reporting channels through which its own policy directed employees to report financial disclosure concerns. (Palmer Decl. ¶24.)

48.   Spotify Technology S.A.'s Code of Conduct, filed with the SEC as an exhibit to the Form 20-F (EX-11.1), states: "Spotify will not discipline, discriminate against or retaliate against any person who reports a complaint in good faith and will abide by all laws that prohibit retaliation

against employees who lawfully submit complaints under these procedures." The conduct alleged herein violated the Company's own published anti-retaliation policy.

49.   The predicate acts are related: each was directed at suppressing Plaintiff's reporting of corporate wrongdoing and maintaining the Company's non-disclosure of material matters.  The predicate acts are continuous: they span the period from at least November 2025 through the present, are ongoing, and pose a concrete threat of future racketeering activity.  Plaintiff's 104-week statutory sick leave period expires approximately June 2026, at which point Defendants may seek to terminate his employment, which would constitute a further act of interference with employment under 18 U.S.C. § 1513(e).  See *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241-42 (1989) (pattern requires relatedness and continuity or threat thereof).

50.   As a direct and proximate result of the pattern of racketeering activity, Plaintiff has been injured in his business and property within the United States.  The pattern of racketeering activity has impaired Plaintiff's exercise of rights under the Dodd-Frank whistleblower programme, a US statutory entitlement, and has interfered with his cooperation with the SEC, a US federal agency.  Plaintiff's compensation includes equity awards in Spotify Technology S.A., whose ordinary shares are listed and primarily traded on the New York Stock Exchange in US dollars. Defendants have demonstrated a willingness to take adverse employment actions regardless of legal constraints:  the salary threat of 26 February 2026 was made in apparent disregard of Dutch statutory sick leave protections.  Plaintiff's equity awards in US-listed securities remain subject to the same enterprise whose pattern of retaliatory conduct is documented herein.  The full extent of damages, including any interference with Plaintiff's equity rights, will be proven at trial.  See *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 354 (2016) (private RICO plaintiff must allege domestic injury).

## V. CLAIMS FOR RELIEF

**COUNT I: DODD-FRANK WHISTLEBLOWER RETALIATION**

*(15 U.S.C. § 78u-6(h)(1)(A))*

*(Against All Defendants)*

51.  Plaintiff incorporates by reference all preceding allegations.

52.  Plaintiff is a "whistleblower" within the meaning of 15 U.S.C. § 78u-6(a)(6), having made a disclosure of information relating to possible violations of the securities laws to the SEC on 1 March 2026 (TCR Submission No. 17724-027-843-868). *Digital Realty Trust, Inc. v. Somers*, 583 U.S. 330 (2018).

53.  Plaintiff engaged in protected activity under 15 U.S.C. § 78u-6(h)(1)(A), including: (a) providing information relating to possible securities law violations to the SEC, protected under § 78u-6(h)(1)(A)(i); (b) making disclosures required or protected under the Securities Exchange Act of 1934, the Sarbanes-Oxley Act of 2002, and 18 U.S.C. § 1350, protected under § 78u-6(h)(1)(A)(iii), specifically by notifying the Company's compliance team on 20 February 2026 that the Form 20-F was deficient and by delivering a memorandum to the Audit Committee documenting matters requiring regulatory disclosure; and (c) cooperating with the SEC. The adverse action of 26 February 2026 followed Plaintiff's protected disclosures under § 78u-6(h)(1)(A)(iii) and preceded, by three days, his protected disclosure under § 78u-6(h)(1)(A)(i).  Both categories of protected activity are independently actionable.

54.  Defendants took adverse employment actions against Plaintiff, including threatening to stop his salary.

55.  The adverse actions were in retaliation for Plaintiff's protected activity.  The salary threat occurred six days after Plaintiff's written notification of his intent to refer the matter to the SEC and was made by an individual who had received the memorandum and its whistleblower invocations

24 days earlier.  The same HR management chain that handled settlement discussions and was aware of Plaintiff's memorandum to the Audit Committee directed the threat.

56.  Plaintiff is entitled to all relief provided under 15 U.S.C. § 78u-6(h)(1)(C), including reinstatement with the same seniority status, two times the amount of back pay otherwise owed with interest, and compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

## COUNT II: CIVIL RICO

### *(18 U.S.C. § 1964(c))*

### *(Against All Defendants)*

57.  Plaintiff incorporates by reference all preceding allegations.

58.  Spotify Technology S.A. and its subsidiaries constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).  The enterprise is engaged in and its activities affect interstate and foreign commerce.

59.  Defendants have conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

60.  The pattern of racketeering activity consists of multiple acts indictable under 18 U.S.C. § 1512(b)(3) and 18 U.S.C. § 1513(e), as set forth in paragraphs 44-49 above.  Each predicate act is enumerated in 18 U.S.C. § 1961(1)(B).

61.  Plaintiff has been injured in his business or property by reason of the conduct of the enterprise's affairs through the pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Plaintiff's domestic injury includes impairment of his rights under the Dodd-Frank whistleblower programme, interference with his cooperation with the SEC, and threatened

interference with equity awards in US-listed securities (NYSE: SPOT) held by an enterprise that has demonstrated willingness to take adverse actions regardless of legal constraints. *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 354 (2016).

62.  Plaintiff is entitled to recover threefold the damages he sustains, together with the cost of suit, including reasonable attorneys' fees. 18 U.S.C. § 1964(c).


# VI. PRAYER FOR RELIEF


WHEREFORE, Plaintiff respectfully requests that this Court:

(a)  Declare that Defendants violated 15 U.S.C. § 78u-6(h) and 18 U.S.C. § 1962(c);

(b)  Enter a permanent injunction restraining Defendants, and their officers, agents, employees, and all persons in active concert or participation with them, from taking any retaliatory action against Plaintiff in any jurisdiction;

(c)  Award reinstatement with the same seniority status, or front pay in lieu thereof;

(d)  Award two times the amount of back pay otherwise owed, with interest, pursuant to 15 U.S.C. § 78u-6(h)(1)(C);

(e)  Award treble damages pursuant to 18 U.S.C. § 1964(c);

(f)  Award reasonable attorneys' fees, litigation costs, and expert witness fees;

(g)  Award such other and further relief as this Court deems just and proper.


# VII. JURY DEMAND


Plaintiff demands a trial by jury on all issues so triable.

_____

Dated: 3 March 2026 Rotterdam, The Netherlands

Respectfully submitted,

_____

J. Palmer, Pro Se

Paetsstraat 2A

3039 XP Rotterdam

The Netherlands

_____

# VERIFICATION

I, J. Palmer, declare under penalty of perjury under the laws of the United States of America that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

Executed on 3 March 2026, at Rotterdam, The Netherlands.

_____

J. Palmer

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

---

J. PALMER,

      Plaintiff,

   v.

SPOTIFY TECHNOLOGY S.A. et al.,

      Defendants.

Case No. _____

---

## DECLARATION OF J. PALMER IN SUPPORT OF COMPLAINT

I, J. Palmer, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

### Identity and Employment

1.   I am the Plaintiff in the above-captioned action.  I am a citizen of the Netherlands, with a registered home address at Paetsstraat 2A, 3039 XP Rotterdam, The Netherlands.  I am over eighteen years of age and competent to testify to the matters stated herein. I make this declaration based on personal knowledge.

1

2.   I am employed as a Senior Engineer by Spotify Netherlands B.V. I have been employed by Spotify Netherlands B.V. since 4 April 2022.

3.   My total compensation for 2025 was approximately $1,260,000, comprising salary and equity awards in Spotify Technology S.A. ordinary shares listed on the NYSE. Equity awards vest over time and form the majority of my compensation. My salary, including Dutch statutory sick pay, is my sole source of income.

4.   I was elected Chairman of the Works Council (*ondernemingsraad*) at Spotify Netherlands B.V. The Works Council is a statutory employee representative body established under the Dutch Works Councils Act (*Wet op de ondernemingsraden*), analogous to a recognised union under US labour law. In that capacity, I was involved in legal proceedings before the Enterprise Chamber (*Ondernemingskamer*) of the Amsterdam Court of Appeal, in which the court ruled that Spotify could not reasonably have made certain organisational decisions without consulting the Works Council and ordered the company to reverse course (ECLI:NL:GHAMS:2023:3520, 22 December 2023).

5.   Legal strategy, compliance functions, investor relations, and governance oversight within the Spotify group are directed from the United States. The General Counsel of Spotify Technology S.A. is based in New York. The Chair of the Audit Committee, Thomas Staggs, to whom my memorandum was addressed, is based in the United States. Key members of the Board of Directors are US-based. HR decisions affecting my employment are made through a management chain spanning Spotify Netherlands B.V., Spotify AB (Stockholm), and the parent company, with legal and compliance oversight from the United States. Decisions regarding the response to my memorandum, the decision whether to disclose in the Form 20-F, and the salary threat described below were made or directed by individuals located in the United States and Sweden reporting to the parent company.

6.   I have been on sick leave since June 2024. I have received thirteen consecutive assessments from the company doctor (*bedrijfsarts*, an independent occupational physician whose medical de-

terminations are binding under Dutch statutory sick leave law), each of which classified my ill-ness as work-related. The most recent assessment, dated 15 December 2025, explicitly states that work-related problems caused the sick leave. The assessment reports are in Dutch and are in my possession.

### Memorandum

7.    In January 2026, I prepared a 145-page memorandum documenting governance failures, legal violations, and retaliatory conduct within the Spotify group. I prepared the memorandum over a period of several months.

8.    The memorandum sets out potential liability in the range of eight to nine figures. It documents violations of Dutch employment law, the Dutch Works Councils Act, the General Data Protection Regulation, and Dutch tort law, and identifies a cross-jurisdictional pattern of conduct.

9.    The memorandum explicitly identifies matters that I understood to require disclosure in Spo-tify Technology S.A.'s filings with the SEC, including material pending or reasonably foreseeable legal proceedings and risks. The cover letter accompanying the memorandum noted that these mat-ters did not appear in the Company's SEC filings and stated that future filings would be reviewed accordingly.

10.    On 29-30 January 2026, I delivered the memorandum by DHL registered post to three Spotify entities:

(a)    Spotify USA Inc., New York, New York. Delivered 29 January 2026. DHL tracking number 4415432862.

(b)    Spotify AB, Regeringsgatan 19, 111 53 Stockholm, Sweden. Delivered 29 January 2026. DHL tracking number 4415711252.

(c)    Spotify Technology S.A., 33 Boulevard Prince Henri, 1724 Luxembourg, Luxembourg. De-livered 30 January 2026. Signed by K. Gro. DHL tracking number 4414403696.

True and correct copies of the DHL delivery confirmations are in my possession. The New York delivery confirmation is attached as Exhibit 4.

11. The memorandum was accompanied by a cover letter addressed to Thomas Staggs, Chair of the Audit Committee of the Board of Directors of Spotify Technology S.A., and to the other members of the Audit Committee. A true and correct copy of the relevant excerpt of the cover letter is attached as Exhibit 6.

12. The cover letter explicitly invoked whistleblower protections and noted that my prior escalation to the General Counsel had also invoked whistleblower protections. The cover letter noted that the matters documented in the memorandum did not appear in the Company's SEC filings and stated that future filings would be reviewed accordingly. The cover letter requested that Investor Relations bypass the General Counsel's office due to a conflict of interest.

13. On 2 February 2026, I sent the memorandum and accompanying cover letter directly to Company management by email. The recipients included Ms Krusenstierna (the HR representative who later made the salary threat), the General Counsel, and Courtney Agerter (the senior HR representative handling settlement discussions). The cover letter explicitly invoked whistleblower protections under the Dutch Whistleblower Protection Act (*Wet bescherming klokkenluiders*). All recipients of the salary threat of 26 February 2026 had received the memorandum and its whistleblower invocations at least 24 days prior.

14. On 26 November 2025, I requested in writing that the Company preserve all documents relating to my employment.

## 20-F and Compliance Response

15. On 9 December 2025, the Company sent me a letter which stated it had been "prepared with the assistance of our legal team, who is familiar with Dutch employment law, as well as our external legal adviser." That letter stated: "A 'legal hold' has been put in place to ensure that it will not be

automatically deleted due to any internal policy. All information relevant to your employment and reintegration is handled in accordance with applicable laws and regulations." The Company filed its Form 20-F two months later, on 10 February 2026. A copy of the 9 December 2025 letter is in my possession and available to the Court upon request.

16.   On 10 February 2026, Spotify Technology S.A. filed its annual report on Form 20-F with the SEC. The filing includes officer certifications stating that the report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made not misleading. The filing discloses certain litigation matters, including mechanical licensing disputes. It does not disclose the matters or the potential liability documented in my memorandum.

17.   On 19 February 2026, three weeks after delivery, the Company's compliance team acknowledged receipt of my memorandum by email. A true and correct copy of that email is attached as Exhibit 3.

18.   On the same date, 19 February 2026, Courtney Agerter, a senior HR representative, confirmed during a telephone call that the compliance team would be contacting me regarding the memorandum. She subsequently confirmed this in writing by email. Ms Agerter's email is in my possession and available to the Court upon request.

19.   As of the date of this declaration, I have not received confirmation that Thomas Staggs, Chair of the Audit Committee and the addressee of the memorandum, has personally reviewed it.

20.   On 20 February 2026, I notified the compliance team in writing that Spotify's Form 20-F was deficient and that, absent a substantive response by 24 February 2026, I would refer the matter to the SEC. A true and correct copy of my email is attached as Exhibit 2.

**Salary Threat**

21.   No substantive response was received from the Company by the stated deadline of 24 February 2026.

5

22.  On 26 February 2026, Ebba Krusenstierna, an HR representative, threatened in writing to stop my salary.  The threat was framed as a response to my non-completion of a periodic evaluation form, a mandatory submission to the Dutch government agency responsible for employee welfare (UWV). The Company had sent routine reminders regarding the same form on 8 January, 20 January, and 13 February 2026.  None of those reminders threatened any consequences.  The escalation to a salary threat occurred only after my 20 February 2026 notification of my intent to file with the SEC. The form contained employer statements regarding the reintegration process that I believed to be false and that were inconsistent with the findings documented in my memorandum to the Audit Committee.  My memorandum was delivered after the initial form request.  The cover letter accompanying the memorandum, sent to Company management on 2 February 2026, stated that it addressed all outstanding matters between the parties. A true and correct copy of Ms Krusenstierna's email is attached as Exhibit 1.

23.  Ms Krusenstierna is my primary HR contact throughout the relevant period.  She was the direct recipient of my 2 February 2026 email to management, which attached the memorandum and a cover letter explicitly invoking whistleblower protections.  She was also copied on prior correspondence in which I reported the underlying wrongdoing documented in the memorandum.

24.  Beginning on 26 November 2025, I repeatedly requested in writing that the Company provide its whistleblower policy and internal reporting channels, as required by the Dutch Whistleblower Protection Act (*Wet bescherming klokkenluiders*), the EU Whistleblower Directive (Directive 2019/1937), and SEC regulations applicable to NYSE-listed companies. On 7 December 2025, I escalated to the General Counsel, explicitly invoking whistleblower protections. On 9 December 2025, in a letter prepared with the assistance of the Company's internal legal team and external legal adviser, the Company refused to provide any policies, stating it did "not have these in PDF format" and directing me to the company intranet rather than providing a copy. The Company did not provide the whistleblower policy until 4 February 2026, two days after I delivered the memorandum to management and more than ten weeks after my first request. When I eventually received

the policy, it stated that complaints regarding "the integrity of Spotify's financial disclosures, books and records" should be reported through the Spotify Ethics Line and that such complaints "will be reviewed and investigated by the Company's Audit Committee." A true and correct copy of the policy, dated July 2022, is in my possession.

25.   Ms Krusenstierna is the direct report of Courtney Agerter.  Ms Agerter handles settlement discussions relating to my employment and, on 19 February 2026, confirmed in writing that the compliance team would be contacting me regarding the memorandum.

26.   The salary threat occurred six days after I notified the compliance team in writing of my intention to refer the Company's SEC filing deficiency to the SEC.


### SEC Filing and Formal Notice

27.   On 1 March 2026, I filed a formal disclosure with the United States Securities and Exchange Commission via the SEC's TCR portal (Submission No. 17724-027-843-868).  A true and correct copy of the SEC's confirmation is attached as Exhibit 5.

28.   On 1 March 2026, I sent a formal notice to the Company by email, addressed to the compliance team, the General Counsel, the CHRO, relevant members of the HR team, and the Investor Relations email address for the attention of the Audit Committee Chair.  The notice cited the federal criminal whistleblower protection statutes (18 U.S.C. §§ 1512, 1513) and the Dodd-Frank anti-retaliation provisions, and set out the legal framework applicable to the Company's conduct.  A true and correct copy of that notice is in my possession and available to the Court upon request.

29.   On 1 March 2026, I sent a supplementary letter directly to the Chair of the Audit Committee via the Board email address and Investor Relations, notifying him of the SEC disclosure and invoking the Audit Committee's oversight obligations under Section 301 of the Sarbanes-Oxley Act and NYSE Listed Company Rule 303A.07.  A true and correct copy of that letter is in my possession and available to the Court upon request.

30.   When filing the TCR, I opted in to the SEC whistleblower award programme pursuant to 15 U.S.C. § 78u-6(b).

31.   On 2 March 2026, I submitted a report of the alleged criminal conduct to the Federal Bureau of Investigation via the FBI's online tip submission portal (Submission ID: 35ccd3b4c0454945a0 5e635c2cfed7d9). On 3 March 2026, I sent a further disclosure to the FBI by registered post.

32.   On 3 March 2026, I disclosed the alleged criminal conduct to the United States Attorney's Office for the Southern District of New York by registered post.

**Prior Retaliation Pattern**

33.   In April–June 2024, I received a negative performance rating that was explicitly tied to my Works Council duties.  The rating document cited reduced availability to my team resulting from Works Council commitments as a basis for the negative assessment. The rating document is in my possession.

34.   After I raised my legally protected status and requested correction, HR refused to remove the rating.  The rationale given in writing was that the rating stood "only because you are a works council member." That correspondence is in my possession.

35.   On 21 November 2025, the Company explicitly linked my rejection of a settlement offer to "intensifying" reintegration obligations.  The email stated: "If you do not wish to proceed, [ . . . ] we will need to further intensify the reintegration obligations." (Ex. 7.)

36.   Within days, the Company executed the threat by re-engaging a reintegration coach who had previously concluded her involvement was not necessary.  On 26 November 2025, the coach emailed me directly, stating: "No worries, I expected this. Just doing what was asked. I will inform Spotify."

37.  All incidents described in paragraphs 33-36 are documented in contemporaneous correspondence that I have preserved.

38.  In each instance described in paragraphs 33-36, the adverse action followed my assertion of statutory rights or my reporting of wrongdoing to the Company.

## Irreparable Harm

39.  My salary, including statutory sick pay, is my sole source of income.

40.  I have been on sick leave since June 2024. I am unable to obtain alternative employment.

41.  Under Dutch law, during the first 104 weeks of sick leave, the employer is obligated to continue paying salary (at a rate of at least 70% in the second year).  This payment is my primary means of financial support.

42.  If Defendants execute the threatened salary stop, I will be unable to meet basic living expenses.

43.  The threat to stop my salary was made in writing on 26 February 2026 and has not been withdrawn.

## Imminent Threat

44.  My 104-week statutory sick leave period expires approximately in June 2026. After that date, Defendants may take steps, through any group entity, to terminate my employment.

45.  Given the documented pattern of escalating adverse actions and the unretracted salary threat, I face a concrete and imminent risk of further harm, including loss of income and termination of employment.

46.   Absent judicial intervention, I face imminent and irreparable loss of my sole source of income and potential termination of employment in retaliation for my disclosures to the SEC.

---

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 3 March 2026, at Rotterdam, The Netherlands.

---

J. Palmer

---

**EXHIBIT LIST**

| Exhibit | Description |
| --- | --- |
| 1 | Email from Ebba Krusenstierna threatening salary stop (26 February 2026) |
| 2 | Email from J. Palmer to compliance team re Form 20-F deficiency (20 February 2026) |
| 3 | Email from compliance team acknowledging receipt of memorandum (19 February 2026) |

| Exhibit | Description |
| --- | --- |
| 4 | DHL delivery confirmation, New York (29 January 2026) |
| 5 | SEC TCR confirmation (Submission No. 17724-027-843-868) (1 March 2026) |
| 6 | Excerpt of cover letter to Audit Committee (29 January 2026) |
| 7 | Email linking settlement rejection to "intensifying" reintegration (21 November 2025) |

# EXHIBIT 1

Email from Ebba Krusenstierna threatening salary stop (26 February 2026)

| **From:** | Ebba Krusenstierna <ebbak@spotify.com> |
| **To:** | Josh Palmer <joshpalmer123@gmail.com>, Angel Ng <angelng@spotify.com> |
| **Date:** | Thu, 26 Feb 2026 17:52:00 +0100 |
| **Subject:** | Re: Periodic Evaluation |

---

Hi Josh,

Hope all is well.

I'm following up on the evaluation form attached and below. As you've been informed, part of your reintegration obligations is to complete and provide the periodic evaluation form(s). We've sent two reminders, but you still haven't completed the form or responded to the emails. If you need clarification or support, or if anything is making it difficult for you to engage at this time, please let us know.

We prefer not to take this step, but if we do not receive the completed form from you by *March 4, 2026,* the latest, we will have no choice but to stop your salary payment for the duration of non-compliance. To avoid a salary stop as of and including March 5, 2026, we kindly request that you return the signed form no later than March 4, 2026 and actively cooperate with your re-integration obligations going forward.

We would appreciate your response at your earliest convenience.

For your information, I'll be OOO until 19 March 2026, so I'm looping in my colleague Angel, who will cover in the meantime. Please ensure that Angel is cc:d so she receives the form.

Thank you for your cooperation.

Kind regards Ebba

On Fri, Feb 13, 2026 at 10:40AM Ebba Krusenstierna <ebbak@spotify.com> wrote:

# EXHIBIT 2

Email from J. Palmer to compliance team re Form 20-F deficiency (20 February 2026)

**From:**     Josh Palmer <joshpalmer123@gmail.com>
**To:**       Compliance Team <compliance@spotify.com>
**Date:**     Fri, 20 Feb 2026 00:10:41 -0800
**Subject:**  Re: Your letter dated January 27, 2026

---

Compliance Team,

Thank you for confirming receipt.

For the record: this memorandum was delivered by registered post in triplicate to Spotify's offices in Stockholm, Luxembourg (registered office), and New York. Receipt is therefore not in question.

Given the gravity of the matters documented and the time elapsed, I require a substantive response - not merely an acknowledgement - by *24 February 2026*.

I note that my correspondence was addressed directly to the Audit Committee Chair. Please confirm in writing that:

1. The Audit Committee Chair has personally received and reviewed the memorandum; and

2. The Audit Committee has been formally convened or briefed on the matters raised, independent of management; and

3. The Audit Committee's timeline for providing a substantiative response.

A response from the company's internal compliance team does not satisfy these requirements.

Please note that certain disclosure obligations are running independently of your internal review and are not contingent on its outcome.

I also draw the compliance team and Audit Committee's attention to Spotify's obligations as a SEC-registered foreign private issuer. Form 20-F requires disclosure of material legal proceedings, including those pending or reasonably foreseeable. Spotify's recent SEC filings do not reflect the matters documented in my memorandum. Absent a substantive response by 24 February 2026, I will refer this matter to the SEC.

Regards,

Josh Palmer

On Thu, 19 Feb 2026 at 07:38, Compliance Team <compliance@spotify.com> wrote:

1

# EXHIBIT 3

Email from compliance team acknowledging receipt of memorandum (19 February 2026)

**From:**    Compliance Team <compliance@spotify.com>
**To:**    joshpalmer123@gmail.com
**Date:**    Thu, 19 Feb 2026 21:08:15 +0530
**Subject:**    Your letter dated January 27, 2026

---

Hi Josh, We are in receipt of your letter dated January 27, 2026, and are reviewing it. Thank you.

Best regards, Compliance Team

# EXHIBIT 4

DHL delivery confirmation, New York (29 January 2026)



27 February 2026

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 4415432862.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 4415432862 was delivered on 29 January 2026 at 16.13**

| | | | |
|---|---|---|---|
| **Shipment Status** | Delivered | **Destination Service Area** | NEW YORK<br>UNITED STATES OF<br>AMERICA |
| | | **Piece ID(s)** | VGLEXP1304823382 |

---

### Additional Shipment Details

| | | | |
|---|---|---|---|
| **Service** | EXPRESS 10:30 doc | **Origin Service Area** | ROTTERDAM<br>NETHERLANDS, THE |
| **Picked Up** | 28 January 2026 at 15.09 | **Shipper Reference** | 4415432862NL20260128130928679<br>85F7E97A0B94-44B7-AFDF-5B5ACD10B05 |

# EXHIBIT 5

SEC TCR confirmation (Submission No. 17724-027-843-868) (1 March 2026)



# Tips, Complaints, and Referrals

## Summary Page - After Submission

---

### This export was generated on Sun, March 01, 2026 at 05:06:25 PM EST

The Complaint Form questions that you responded to, the answers you entered for those questions, and any documents that you have uploaded to this TCR are listed below.

### Submission Number: 17724-027-843-868

Thank you for contacting the United States Securities and Exchange Commission. This automated response with your Submission Number confirms that your submission has been received successfully. Please write down your Submission Number or print/save a copy of your submission for future reference. Once you navigate away from this page you will not be able to get back to your submission.

We are always interested in hearing from the public, and your submission will be given careful consideration in view of the Commission's overall responsibilities under the federal securities laws. Please note, however, that it is the Commission's policy to conduct its investigations on a non-public basis in order to preserve the integrity of its investigative process. Subject to the provisions of the Freedom of Information Act, we cannot disclose to you any information which we may gather, nor can we confirm the existence or nonexistence of an investigation, unless such information is made a matter of public record in proceedings brought before the Commission or the courts. Therefore, this may be the only response that you receive. If you want to learn more about how the Commission handles inquiries or complaints, please visit http://www.sec.gov/complaint/info_tipscomplaint.shtml.

# EXHIBIT 6

Excerpt of cover letter to Audit Committee (29 January 2026)

**CONFIDENTIAL**

J. Palmer

January 27, 2026

Mr Thomas Staggs, Chair of the Audit Committee
Members of the Audit Committee:
Mr Christopher (Woody) Marshall
Mr Barry McCarthy
Ms Mona Sutphen
Ms Padmasree Warrior

Spotify Technology S.A.

*By registered mail (signed for) to: Luxembourg (registered office), New York (HQ), Stockholm;
by email to ir@spotify.com*[1]

Dear Mr Staggs,
Dear Members of the Audit Committee,

I am Josh Palmer, an employee of Spotify Netherlands B.V., formerly elected Chairman of its Works Council, and a shareholder. I have been on sick leave since June 2024.

I am writing to inform the Audit Committee of a structural failure of corporate governance and to ask that appropriate action be taken. Your Charter assigns responsibility for the review and evaluation of the Company's compliance with legal and regulatory requirements, the performance of the internal audit function, and the review and evaluation of enterprise risk management. On 7 December 2025, I escalated the structural pattern of illegality and corporate governance failures to the General Counsel. He has seen fit to ignore it. The Audit Committee is thus the last internal level of escalation available to me.

My escalation to the General Counsel explicitly invoked whistleblower protections.[2] I asked his office to take ownership and ensure the company's handling was brought back into compliance with its legal obligations. He did not respond.[3]

The attached memorandum documents retaliation against worker representatives across Europe, structural governance failures, systematic Code of Conduct violations by multiple executives across multiple departments, illegality by C-suite officers, and a subsequent pattern of denial, coercion, and coverup. The documentary record includes:

- contemporaneous admissions by the CHRO that the company knowingly violated Dutch law
- external counsel advice ignored—the company's own lawyer later admitted in open court that she had advised against proceeding
- an adverse court ruling which the company then failed to comply with (the equivalent of contempt of court)
- a formal statutory document from the Works Council documenting this non-compliance, as well as concealment, false statements, and retaliation
- reports from six worker representatives across three countries describing a pattern of harassment by the same senior HR executive, leading to extended sick leave or departure

If this is the first the Board is hearing of these matters, that itself warrants attention.

To respect the Committee's time, I note that the memorandum is structured in sections. The Committee will likely be most interested in:

- The executive summary
- Section 1 (retaliation under Art 21 WOR—the Dutch statutory prohibition on disadvantaging duly elected worker representatives)
- Section 7 (cross-jurisdictional pattern)
- Section 9: Settled case law establishes full, uncapped compensation—past, present, future—with joint and several liability for executives personally. Courts have also ordered behavioural remedies.[4]
- Section 10 (damages model and financial exposure)[5]

For context, the Committee will be unlikely to be interested in the minutiae of Dutch sick-leave procedure (Sections 3–6). Section 2 (GDPR) documents medical data breaches that were part of the retaliation pattern.

This letter is not a settlement negotiation. That is not a matter for the Board. I am writing to ask the Audit Committee to concretely address the pattern of retaliation, malfeasance, corporate governance failures, and structural illegality documented in the memorandum.

Out of respect for due process and the Board's oversight responsibilities, I have not yet disclosed to shareholders, regulators, or the press. I have not yet shared this memorandum with worker representatives in other jurisdictions or the Special Negotiating Body for the European Works Council. The nature and timing of any next steps will be governed by the decisiveness, speed, and sincerity of the Board's response.

I remain open to written correspondence and am available to discuss these matters with the Committee or its designee.

Yours sincerely,

J. Palmer

**Enclosure:** Memorandum (145 pages)

---

1. I have asked Investor Relations to forward this correspondence directly to the Audit Committee, not via the General Counsel's office, given the conflict of interest documented in the memorandum. If the Committee is receiving this from the General Counsel rather than directly, I would ask the Committee to consider what that suggests about information flow within the company.

2. The EU Whistleblower Directive provides robust protections for employees reporting breaches of law, including external disclosure when internal disclosure fails. The criteria established by the European Court of Human Rights in *Halet v. Luxembourg* (Grand Chamber, 2023) are met.

3. Two days after my escalation to the General Counsel, I received a letter, drafted with external counsel assistance, denying conduct that had already occurred, claiming to be "simply not aware" of emails the company had acknowledged receiving, and asking me to stop sending written correspondence. The memorandum addresses this in detail.

4. See e.g. *Milieudefensie v. Shell* (Rb Den Haag, 26 May 2021, *ECLI:NL:RBDHA:2021:5339*).

5. I note that the matters documented herein do not appear in the Company's current SEC filings. The Committee may wish to consider its material disclosure obligations under Form 20-F and Form 6-K. I will be reviewing future filings accordingly.

# EXHIBIT 7

Email linking settlement rejection to "intensifying" reintegration (21 November 2025)

**From:**    Ebba Krusenstierna <ebbak@spotify.com>
**To:**       Josh Palmer <joshpalmer123@gmail.com>
**Date:**    Fri, 21 Nov 2025 09:13:00 +0100
**Subject:**  Re: Following up on yesterday's call

---

Hi Josh,

Thanks for your email, and sorry for the delay.

To clarify: you previously indicated that you do not wish to return to Spotify. That is why we are making this proposal. Our proposal is based on observing your 1 month notice period plus extending it by an additional four months. If we reach an agreement this month, your employment would end on 1 May 2026 (last day of employment 30 April 2026). This compensation includes the statutory transition payment. For the avoidance of doubt, as the employment relationship is ending at your initiative, you are not entitled to the transition payment, and therefore we consider this to be a very generous settlement proposal.

If you do not wish to proceed, you will simply remain in your current role and employment status will be unchanged. In that case we will need to further intensify the reintegration obligations. This will require your active cooperation, and in January, based on the information currently submitted in Workday which indicates that you will be fully recovered by then, you would be expected to resume your work. If you are not fully recovered at that time, the reintegration process continues, and you will again be expected to comply with all related obligations.

Regarding the third-year wage sanction you mentioned: at this stage, it is uncertain whether such a sanction will be imposed, so that is not relevant now.

Please let us know whether you are willing to accept our proposal or if you have any further questions.

Best, Ebba

1